

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**12/05/2012**

In re:                                    §
                                          §       Case No. 06-36268
VINCENT C. JACKSON,                       §       Chapter 7
     DEBTOR.                              §
                                          §
                                          §
                                          §

## MEMORANDUM OPINION REGARDING DENIAL OF THE TRUSTEE'S SECOND APPLICATION FOR *NUNC PRO TUNC* EMPLOYMENT OF MUNSCH HART KOPF & HARR, P.C. AS ATTORNEYS FOR THE TRUSTEE

[Doc. No. 117]

### I.   INTRODUCTION

Routinely, this Court receives requests from Chapter 7 trustees seeking to retain the trustee's own firm as counsel. This Court has noticed that all too often these applications for employment are accompanied by claims that the trustee's firm is "uniquely qualified" to perform the proposed duty. Such broad assertions are inadequate; as a fiduciary to the estate, a trustee has a duty to act in the estate's *best* interests. When the trustee seeks to employ a professional, such as an attorney, on the estate's behalf, the trustee therefore must seek and propose the best counsel. Competent professionals may not necessarily "satisfy [the] high standard of conduct" that trustees must meet. *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1256 n.6 (5th Cir. 1986); *In re Interamericas, Ltd.*, 321 B.R. at 836; *see also In re Evangeline Refining Co.*, 890 F.2d 1312, 1323 (5th Cir. 1989). Accordingly, and as this Court made clear in *In re Bechuck*, statements such as "uniquely qualified" do not "include sufficient detail regarding the proposed attorneys' qualifications." 472 B.R. 371, 375 (2012). They are, in essence, empty declarations.

The Court therefore issues this Memorandum Opinion to reiterate that applications for employment must meet several factors for approval. The proposed counsel must first satisfy the

general standard set forth in 11 U.S.C. § 327(a), as well as the more specific factors under Federal Bankruptcy Rule 2014[1] that this Court outlined in *Bechuck*. These factors, this Court now makes clear, apply equally to requests to employ the trustee's own firm. Furthermore, an application for employment of the trustee's firm must satisfy the additional "best interest of the estate" requirement set forth in 11 U.S.C. § 327(d), and as detailed in *In re Interamericas, Ltd.*, 321 B.R. 830, 833 (Bankr. S.D. Tex. 2005) and *In re Various Applications of Eric C. Kurtzman*, 220 B.R. 801 (Bankr. S.D.N.Y. 1998) *aff'd sub nom. In re Kurtzman*, 220 B.R. 538 (S.D.N.Y. 1998) (the *Kurtzman/Interamericas* cases).

In the case at bar, Ben B. Floyd, the Chapter 7 Trustee (the Trustee), seeks approval for his own law firm, Munsch Hart Kopf & Harr, P.C. (MHKH), to represent the Chapter 7 estate of Vincent C. Jackson (the Debtor). In particular, the Trustee requests that the Court approve Timothy Million (Million) as the attorney-in-charge, and approve Jon Hyland (Hyland) as the attorney who will advise the Trustee in connection with intellectual property matters, including intellectual property litigation and the possible sale of intellectual property rights. The Debtor opposes the Trustee's request.

Based upon the entire record, the Court now makes the following written Findings of Fact and Conclusions of Law in this contested matter pursuant to Federal Bankruptcy Rules 9014(c) and 7052.[2] As set forth below, this Court concludes that the Trustee's Second

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

[2] Federal Bankruptcy Rule 9014(c) makes Federal Bankruptcy Rule 7052 applicable to this matter; and, in turn, Bankruptcy Rule 7052 makes Federal Rule of Civil Procedure 52 applicable to this matter. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

Application for *Nunc Pro Tunc* Employment of Munsch Hart Kopf & Harr, P.C. as Attorneys for the Trustee (the Second Application) should be denied in part without prejudice and denied in part with prejudice.   Specifically, the Trustee may file another application seeking to retain MHKH so long as he addresses all of the factors discussed in this Memorandum Opinion.   The Trustee may not, however, once again seek *nunc pro tunc* approval for MHKH to represent the estate effective March 1, 2012, as the Trustee has failed to satisfy the requirements imposed by Bankruptcy Local Rule 2014-1(b).

## II.   FINDINGS OF FACT

1. In 1996, the Debtor filed a patent application for "the storage and transfer of games and music over a cellular network to be played on portable devices." [Doc No. 102 at 3].

2. In 2001, the Debtor received a patent, U.S. Patent No. 6,516,466 (the Patent), for this product from the United States Patent and Trademark office.  [*Id.*].

3. In 2003, the Debtor hired a law firm to represent him on legal matters related to the Patent.  [*Id.*].

4. In December of 2003, the Debtor entered into a Patent Marketing Agreement (PMA). According to the PMA, the Debtor would be entitled to 55% of all revenue from the Patent.  [*Id.* at 5].   The law firm represented both the Debtor and the other party to the PMA during the negotiations leading up to the execution of the PMA.

5. Disputes erupted between the Debtor and the law firm, as well as between the Debtor and the entity with whom the Debtor had entered into the PMA.[3]

---

[3] For the lengthy, acrimonious history of the Patent, see this Court's memorandum opinion in *In re Jackson*, No. 06-36268, 2012 WL 3071218 (Bankr. S.D. Tex. July 27, 2012).

6. On November 8, 2006 (the Petition Date), the Debtor filed a voluntary petition for relief under Chapter 7 (the Chapter 7 case). The Debtor also filed his Schedules and Statement of Financial Affairs (SOFA), but in his Schedule B, the Debtor failed to disclose any interest in the Patent, any causes of action, or any right to receive future funds from the Patent or the PMA. [Doc. No. 1].

7. On February 16, 2007, an order granting the Debtor a discharge was entered. [Doc. No. 15].

8. In November of 2007, the Chapter 7 case was closed as a no-asset case. [Doc. No. 18].

9. On June 7, 2011, the Debtor filed suit in the District Court of Harris County, Texas, alleging breach of contract, breach of fiduciary duty, breach of partnership duty and malpractice (the State Court Claims). Most of the events that formed the basis for the State Court Claims occurred before the Debtor filed the Chapter 7 case, and are directly related to the Debtor's ownership interest in the Patent and his rights in any future income generated by the Patent and the PMA. [Doc. No. 102 at 29].

10. On August 18, 2011, the defendants against whom the Debtor brought the State Court Claims (the Defendants) filed their answer, alleging, *inter alia*, that the Debtor lacked standing to sue and that the State Court Claims were barred by judicial estoppel and other limitations. [Doc. No. 27]. On August 31, 2011, the Defendants filed a motion to dismiss the State Court Claims for lack of standing and subject matter jurisdiction. [Doc. No. 102].

11. On October 4, 2011, the Debtor moved to reopen the Chapter 7 case. [Doc. No. 21]. With his motion to reopen, he filed a supplemental Schedule B, which listed previously undisclosed assets of the estate, including: (1) the State Court Claims; and (2) the Patent

4

and the right to future profits pursuant to the PMA. [Doc. No. 22]. The Debtor scheduled the value of these particular assets as "Unknown." The supplemental Schedule B reflected that the Debtor owned no other assets. [*Id.*].

12. On October 5, 2011, this Court granted the Debtor's motion to reopen his Chapter 7 case. [Doc. No. 23]. On this same day, the Trustee was appointed as trustee for the Debtor's estate. [Doc. No. 117 at 2].

13. On November 1, 2011, the Defendants filed a motion to strike the Debtor's supplemental Schedule B. [Doc. No. 27]. Several hearings were held on this motion. On April 19, 2012, this Court took the matter under advisement.

14. On May 3, 2012, the Trustee filed the Application for *Nunc Pro Tunc* Employment of Munsch Hardt Kopf & Harr, P.C. as Attorneys for the Trustee (the First Application). [Doc. No. 98]. On June 8, 2012, the Trustee filed a motion to withdraw the First Application without prejudice. [Doc. No. 99]. On June 11, 2012, the Court approved this motion to withdraw. [Doc. No. 100].

15. On July 27, 2012, the Court issued a memorandum opinion (the Motion to Strike Memorandum Opinion) and an accompanying order, entitled: Order Regarding (1) Goins, Underkofler, Crawford & Langdon, LLP and John J. Sheedy's Motion to Strike Debtor's Supplemental Schedule B; and (2) Debtor's Reciprocal Motion to Strike (the Order). The Order set forth that the Debtor is judicially estopped from benefiting from administration of the assets which the Debtor initially failed to disclose in the Chapter 7 case (i.e., the State Court Claims, the Patent, and any right to future profits under the PMA. The Trustee is, however, allowed to administer these assets for the benefit of the Debtor's creditors, and therefore has the right to pursue and liquidate the State Court

Claims, any other claims that the estate may have, and any interest or rights in the Patent and the PMA.  [Doc. Nos. 102 & 103].

16. On August 8, 2012, the Debtor filed a Notice of Appeal of the Order.  [Doc. No. 108].

17. On August 10, 2012, the Debtor, pursuant to the Order, amended his supplemental Schedule B.  [Doc. No. 111].  The Debtor finally disclosed the PMA, and set forth that its value is $150,000.00.  The value of the State Court Claims and the Patent, however, were not updated and continued to be shown as having a value as "Unknown."  The Debtor did not list any additional assets.  [*Id.*].  Excluding the PMA, the State Court Claims and the Patent, the value of the Debtor's total personal property assets continued to be scheduled at $0.00.  [*Id.*].

18. On September 12, 2012, the Trustee filed the Second Application, in which he requests approval to employ MHKH, including two attorneys of his firm, Million and Hyland.  [Doc. No. 117].  He requests legal assistance in two areas:  bankruptcy and intellectual property, and in particular the Trustee requests counsel on (a) the pending appeal of the Order; (b) any negotiations with the co-owners of the Patent; and (c) the future liquidation and marketing of the Patent.  [Doc. No. 117 at 5, ¶ 17].  In the Second Application, the Trustee also notes that he is a partner and shareholder in MHKH, and has over thirty years of bankruptcy law experience.  [Doc. No. 117-1].

19. In the Second Application, the Trustee also requests retention of MHKH *nunc pro tunc*, effective March 1, 2012.  Since March 1, 2012, MHKH has performed legal services for the Trustee on an hourly basis totaling $35,000; attorneys at MHKH, including Million

and Hyland, have billed approximately 80 hours.[4] [Tape Recording, 10/17/12 Hearing at 3:12:00–3:12:50 p.m.].

20. In the Second Application, the Trustee leaves open the opportunity for "the prosecution of certain causes of action related to the [Patent]," and the Trustee represents that the Patent has "substantial value." [Doc. No. 117 at 5]. The Second Application also states that "the Trustee does at this time contemplate the need for an attorney to handle the pending intellectual property litigation." [Doc. No. 117 at 11]. The Court therefore finds that the Trustee contemplates that he might pursue the estate's rights in the Patent and the PMA through a trial in the District Court of Harris County, Texas (where the State Court Claims are presently pending).

21. Million is a seasoned bankruptcy attorney with seven years of experience handling all types of bankruptcy litigation issues. He has no experience, however, in patent litigation or intellectual property law. [Doc. No. 117 at 8–9, ¶ 27].

22. In the Second Application, the Trustee proposes that Million—operating out of MHKH's Houston office—act as the attorney-in-charge, overseeing both the bankruptcy and patent litigation issues for the estate. The Trustee testified at the hearing on the Second Application that "*all* matters that come in on the legal side" would go through Million. [Tape Recording, 10/17/12 Hearing at 3:01:00–3:02:40 p.m.] (emphasis added). Specifically, Million would be the attorney-in-charge of the following: (1) the pending appeal of the Order; (2) negotiations with the co-owners of the Patent; and (3) the Trustee's efforts to market and liquidate the estate's interest in the Patent. [Doc. No. 117

---

[4] The Trustee provided these figures during his testimony at the October 17, 2012 hearing before this Court. [Tape Recording, 10/17/12 Hearing at 3:12:00–3:12:50 p.m.]. At this Hearing, the Trustee did not introduce time sheets, nor did he or anyone else at MHKH provide a verifiable or delineated breakdown of the amount or the hours.

at 4, 5, & 8]. The Court therefore finds that as the "lead counsel," [*Id.* at 4, ¶ 14], Million

would oversee the contemplated bankruptcy *and* pending litigation concerning the Patent.

23. Hyland is an experienced intellectual property attorney whose office is located in Dallas.[5] [Doc. No. 117-1 at 1]. The Second Application requests his services to "handle the pending intellectual property issues." [Doc. No. 117 at 11, ¶ 32]. While Hyland has handled over thirty intellectual property cases, he has almost no experience in actually trying lawsuits. [Doc. No. 117 at 9, ¶ 29]. He has participated in only two trials, during both of which he only sat at counsel's table. He has never questioned a witness at trial. [Tape Recording, 10/17/12 Hearing at 4:25:00–4:26:00 p.m.].

24. On September 18, 2012, the Debtor objected to the Second Application.[6] [Doc. No. 119]. The Court held a hearing on the Second Application on October 17, 2012 (the Hearing). After listening to the testimony of three witnesses and oral arguments of counsel, the Court took the matter under advisement.

### III.   CREDIBILITY OF WITNESSES

At the Hearing, three witnesses testified: (1) the Trustee; (2) Million; and (3) Hyland.

The Court finds that the testimony of these three witnesses is credible.

---

[5] MHKH has offices in Houston, Dallas, and Austin.

[6] The Trustee thereafter objected to the Debtor prosecuting his objection to the Second Application on the grounds that the Debtor, due to this Court's ruling in the Order, and as set forth in the Motion to Strike Memorandum Opinion [Doc. Nos. 102 & 103], lacked standing. At the Hearing on the Second Application, the Court sustained this objection. However, the Court allowed the law firm which filed the objection to *itself* prosecute the objection. This firm, Reaud, Morgan & Quinn, LLP (Reaud) is a creditor in this case, having timely filed a proof of claim (to which no objection has been lodged) for the value of services provided on behalf of the Debtor, starting in 2007 and ending before the Debtor's Chapter 7 case was reopened in October of 2011. [Proof of Claim No. 4, Exhibit A]. Accordingly, Reaud does have standing to prosecute the objection to the Second Application.

## IV.   CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it affects the administration of this Chapter 7 estate.  Further, this matter is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.,* 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts),* Adv. No. 06-3556, 2006 Bankr. LEXIS 3676, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").  Even though § 157(b)(2) does not expressly mention the retention of counsel for the estate as constituting a core proceeding, an express provision of the Bankruptcy Code (i.e., § 327) governs the dispute at bar; therefore, there can be no doubt that this is a core proceeding. Venue is also proper pursuant to 28 U.S.C. § 1408(1).

### B. Constitutional Authority to Enter a Final Order

Having concluded that this Court has jurisdiction over this matter, this Court nevertheless notes that *Stern v. Marshall,* 131 S. Ct. 2594 (2011) sets forth limitations on the constitutional authority of bankruptcy courts to enter final orders. This Court has a duty to question its constitutional authority to enter a final order for any matter brought before this Court.

First, this Court concludes that denial without prejudice of the Second Application is not a final order because the Trustee is free to file a third application for employment in accordance with the requirements discussed in this Memorandum Opinion. *See WMX Technologies, Inc. v.*

*Miller,* 104 F.3d 1133, 1136–37 (9th Cir. 1997) (holding that "when a district court expressly grants leave to amend, it is plain that the order is not final") (citing *Anastasiadis v. S.S. Little John,* 339 F.2d 538, 539–40 (5th Cir. 1964) (noting a dismissal with leave to amend is not a final appealable order)).  Hence, this Court has the constitutional authority to enter an order denying in part the Second Application without prejudice.

Second, regarding the request for *nunc pro tunc* approval of MHKH as counsel for the Trustee, effective March 1, 2012—which this Court denies with prejudice, thereby making this discrete ruling a final ruling—the Court also concludes it has the constitutional authority to enter a final order on this portion of the Second Application.  This conclusion is based on the notable factual distinctions between *Stern* and the case at bar.  In *Stern,* the debtor's counterclaim was based solely on state law; no express Code provision was at issue. *Id.* at 2611.  In the case at bar, on the other hand, the Second Application's request for *nunc pro tunc* approval is based solely on an express bankruptcy statute, an express bankruptcy rule, and an express local bankruptcy rule:  11 U.S.C. § 327, Bankruptcy Rule 2014 and Bankruptcy Local Rule 2014-1(b).  There are no state law equivalents to this statute or these rules.  Thus, as the ruling on the Trustee's request for *nunc pro tunc* approval is based solely on bankruptcy law, not state law, *Stern* is inapplicable. This Court therefore has the constitutional authority to enter a final order denying with prejudice that portion of the Second Application requesting *nunc pro tunc* approval to retain MHKH as of March 1, 2012.

## C. The Trustee has Failed to Satisfy All of the § 327(a), Rule 2014(a) and *Bechuck* Requirements

### 1. The Second Application Does Not Meet § 327(a)'s General Requirements for Approval

The Trustee, as representative of the estate, may obtain approval to employ professionals to assist him in executing his duties; it is his burden to obtain such approval. *In re Energy Partners, Ltd.,* 409 B.R. 211, 224 (Bankr. S.D. Tex. 2009) (citing *In re Interwest Bus. Equip., Inc.,* 23 F.3d 311, 318 (10th Cir. 1994)). This Court has substantial discretion to grant an application to employ a professional for the estate. *See Arnes v. Boughton (In re Prudhomme),* 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Bigler, LP,* 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010). Under 11 U.S.C. § 327(a), "[t]he Trustee may obtain approval to appoint professionals to assist him in carrying out his duties as long as: (1) the professional does not hold an interest adverse to the estate; and (2) the professional is a disinterested person." 11 U.S.C. § 327(a); *In re Bechuck,* 472 B.R. at 375. Although there is no adversity in the case at bar, the Trustee has failed to establish that MHKH is disinterested.

### a. MHKH Does Not Have an Adverse Interest

An adverse interest includes possession or assertion of any economic interest that tends to lessen the value of the debtor's estate, or creates an actual or potential dispute in which the estate is a rival claimant. *See In re Red Lion, Inc.,* 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994). Courts have found such an adversity to exist in several types of cases. For instance, adversity disqualified the proposed professional in the following instances: (1) the attorney represented both the debtor and the company's president, *Id.* at 297–98; (2) the attorney was a pre-petition creditor of the debtor's estate, *Sholer v. Bank of Albuquerque (In re Gallegos),* 68 B.R. 584

(Bankr. D. N.M. 1986); and (3) the attorney served as an officer or director for the debtor, *In re*

*Wells Benrus Corp.*, 48 B.R. 196 (Bankr. D. Conn. 1985).

None of these situations apply to the case at bar, and the Fifth Circuit has found that there

is no *inherent* adversity created by employing the trustee's own firm as counsel for the estate.[7]

*Pierson & Gaylen v. Creel & Atwood (In the Matter of Consolidated Bancshares, Inc.)*, 785 F.2d

1249, 1256 (5th Cir. 1986). Accordingly, the Court concludes that in the case at bar, MHKH has

no adverse interest to the estate.

### b. Because MHKH has Failed to Conduct a Sufficient Conflicts Check, the Trustee has Failed to Establish that MHKH is a Disinterested Party

Pursuant to § 327(a), the Trustee must also establish that MHKH is a disinterested party.

11 U.S.C. § 327(a); *see also In re Bechuck*, 472 B.R. at 375; *In re Interamericas, Ltd.*, 321 B.R.

at 833; *In re Andover Togs, Inc.*, No. 96-Civ.-7601(DAB), 2001 WL 262605, at *2, *11

(S.D.N.Y. Mar. 15, 2001) (stating that one of two general rules pursuant to § 327(a) is that an

estate professional must be "a disinterested person"). This standard is meant to "prevent

conflicts of interest without regard to the integrity of the person under consideration for

employment." *In re Red Lion, Inc.*, 166 B.R. at 298; *In re Bechuck*, 472 B.R. at 375. As a result,

the experience and reputation of any proposed professionals are irrelevant under this

requirement; if a conflict exists, the employment application must be denied. *See In re Red*

---

[7] While there is no inherent adversity, the Trustee must still be able to maintain his fiduciary obligations to the estate, and as discussed in this Opinion, must satisfy the requirements set forth in 11 U.S.C. § 327(d). *In re Gem Tire & Service Co.*, 117 B.R. 874, 877 (Bankr. S.D. Tex. 1990). As the *Kurtzman* court explained:

> A trustee should only be allowed to retain his law firm upon a showing of the potential benefit to the fiduciary estate, and then, only after the Court is satisfied that the fiduciary will not succumb to the various temptations presented. Trust, rectitude and honor, as well as professional competency, must be demonstrated to support a Court's confidence in such risky appointments.

*Applications of Kurtzman*, 220 B.R. at 805.

*Lion, Inc.*, 166 B.R. at 298 ("The purpose of this standard is that Congress intended to prevent conflicts of interest without regard to the integrity of the person under consideration for employment.").

Before representing the Trustee, MHKH must ensure that it does not have *any* clients whose interests are materially adverse to its proposed representation in the case at bar. In the Second Application, the Trustee explains that MHKH has conducted a thorough conflicts check, which revealed only a single—and unimportant—conflict. [Doc. No. 117 at 5, ¶ 18]. This search, however, was limited to a review of only the scheduled creditors in the Chapter 7 case. [*Id.*]. MHKH has not explored its potential conflicts with clients of the firm who, although not creditors in the Chapter 7 case, could nevertheless be affected by the litigation over the Patent.[8] [Tape Recording, 10/17/12 Hearing at 3:09:00–3:10:00 p.m.]. For example, due to the nature of the Patent [Finding of Fact No. 1], and the size and scope of its law firm [Doc. No. 117-1 at 1] ("MHKH has over 100 lawyers in offices in three cities"), MHKH may have represented, or may be representing today, an infringing company in a matter related to the Patent claims. MHKH, for instance, has represented "a national provider of cellular transmission devices in protection of its technology" in a patenting and licensing matter.[9] [Doc. 119 at 6, ¶ 3].

MHKH asserts two reasons for the failure to conduct a more thorough conflicts check. First, at the Hearing, Million testified that he did not include potential infringers of the Patent in

---

[8] At the Hearing, Hyland testified, "I don't know if there are any conflicts." [Tape Recording, 10/17/12 Hearing at 3:09:00–3:10:00 p.m.]. He also admitted that he has not personally conducted a conflicts check. [*Id.* at 3:47:00–3:47:40 p.m.].

[9] Under these circumstances, at a minimum, an e-mail needs to be sent to all attorneys at MHKH alerting them to the nature of the Patent and requesting the attorneys to give consideration as to whether any of the firm's clients whom they have been representing could be affected by litigation over the Patent.

his conflicts check because he "doesn't know who those people would be." [Tape Recording, 10/17/12 Hearing at 4:36:00–4:37:00 p.m.]. Instead, Million implied that *only* the Debtor can know of potential infringers, and Million placed the burden on the Debtor to reveal the names of these infringers.

The Court finds this explanation to be unsatisfactory. The Debtor is not in a position to know of MHKH's clients or the nature of MHKH's representation of these clients. Thus, despite Million's assertions that he cannot conduct this conflicts check because *only* the Debtor can know of potential infringers [*Id.* at 4:36:00–4:37:00 p.m.], the Debtor is simply not capable of conducting such an assessment. MHKH is in the superior position, and it has a duty to conduct this check. Having already performed $35,000 worth of legal services since March 1, 2012 [Finding of Fact No. 19]—which assuredly concerned issues about the Patent—MHKH *must* determine if its representation of the estate will reasonably appear to be, or in fact will be, adverse to clients of the firm. Texas Disciplinary Rules of Professional Conduct R. 1.06 ("Raising questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation."). Further, as the Trustee currently seeks to retain Million to oversee the entire litigation team [Finding of Fact No. 22], in the event that a future check reveals a conflict with an infringing-client, this conflict will likely affect both Million and Hyland.

The second reason that MHKH gives for not conducting a conflicts check encompassing all of its clients is that the Trustee has not definitively decided if he will pursue litigation against potential infringers of the Patent. [Tape Recording, 10/17/12 Hearing at 3:09:00–3:10:00 p.m.].

14

Thus, according to MHKH, the only required conflicts check is the one MHKH already conducted, covering the Debtor and the creditors of the estate.[10]

Yet, MHKH's actions are inconsistent with a firm that has not decided to pursue patent infringement litigation. First, MHKH has already incurred $35,000 in fees and worked over 80 hours on the case. [Finding of Fact No. 19]; [Tape Recording, 10/17/12 Hearing at 3:12:00–3:12:50 p.m.]. One major potential asset and means to pay these fees is the Patent; there are—according to the Trustee's admission—*no* funds currently available to pay these expenses. [Tape Recording, 10/17/12 Hearing at 3:34:00–3:45:40 p.m.]. MHKH has therefore invested an extraordinary amount of work on a matter without hope of payment.

And, the fact that the Second Application seeks to employ a patent attorney (i.e., Hyland) is additional indication of a strategy to pursue the Patent litigation. Absent an intent to pursue the estate's rights in the Patent, Hyland's services would appear to be unnecessary.

In sum, MHKH must perform a conflicts check of all of its clients to determine if *any* of these clients is, or might be, infringing on the Patent. If MHKH is unwilling to do so, then this Court will not approve any amended application by the Trustee to retain MHKH as the estate's counsel. In this event, the Trustee will simply be unable to establish that MHKH is disinterested, as required by § 327(a).

### 2. The Second Application Also Fails to Meet the Rule 2014(a) and *Bechuck* Factors for Approval

Aside from the requirements of § 327(a), there are certain factors under Rule 2014(a) that the Trustee must satisfy to obtain approval for employing his particular proposed counsel—

---

[10] According to the Second Application, this search revealed that there is only one creditor of the estate who is also a client of MHKH:  Wells Fargo, which holds an unsecured claim.  [Doc. No. 117 at 5, ¶ 18].  MHKH's representation of Wells Fargo is unrelated to this bankruptcy case, and therefore could be excused. [*Id.*].

Million and Hyland.  Rule 2014(a) requires the Trustee to address six categories of information in an application for employment:  (1) the specific facts demonstrating the necessity for employing the attorney; (2) the name of the attorney the trustee wishes to hire; (3) the reasons for selecting the attorney; (4) the professional services the attorney will provide; (5) any proposed fee arrangement; and (6) to the best of the Trustee's knowledge, all of the proposed attorney's connections with the debtor, the creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.  FED. R. BANKR. P. 2014; *In re Kuykendahl,* 112 B.R. 847, 849 (Bankr. S.D. Tex. 1989).   Further, this Court has identified two additional considerations that must be included in an application for employment:  (1) a discussion of how often the attorney has undertaken the specific tasks proposed; and (2) a discussion of how successful the attorney has been in undertaking such tasks in the past.  *In re Bechuck,* 472 B.R. at 376–77.

    **a.  The Trustee has Failed to Satisfy All of the Categories Required by Rule 2014(a) for Million and Hyland**

        *i.   Factor #1:  Necessity for Employing the Specific Attorneys Identified in the Second Application*

Absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals.  *In re Kusler*, 224 B.R. 180, 184 (Bankr. N.D. Okla. 1998).   Rule 2014 therefore requires that the Trustee articulate the necessity for employing each attorney; and, in order to control administrative costs, gives this Court the right to approve all requests for employment.  *See In re Sound Radio, Inc.*, 145 B.R. 193, 202 (Bankr. D.N.J. 1992); *Official Comm. of Unsecured Creditors v. Harris (In re Southwest Food Distribs., LLC)*, 561 F.3d 1106, 1112 (10th Cir. 2009) ("Although the Code vests in the bankruptcy trustee the immediate power to select candidates for employment by the bankruptcy estate, it gives

broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the trustee and the estate, in part by empowering the court to approve candidates so selected."). The Trustee has met this requirement in regards to Million, with one exception, and to Hyland.

Million's services are necessary to handle the pending bankruptcy matters. Here, the Trustee—who is a thirty year bankruptcy attorney—requests the assistance of Million, a seven year bankruptcy attorney, in the appeal of the Order. [Finding of Fact Nos. 18 & 21]. Although the Trustee himself could handle the appeal of the Order, his hourly rate is undoubtedly much higher than Million's hourly rate[11], and therefore it makes economic sense for the Trustee to employ outside counsel whose hourly rates are lower than his. In fact, this Court has frequently approved trustees' applications to employ outside—and less experienced—bankruptcy counsel. *See, e.g.*, *In re Red River Energy Inc.*, 409 B.R. 163 (Bankr. S.D. Tex. 2009) (granting the Trustee's application to employ Million and MHKH).

The issue is not the experience of counsel, but the necessity for his services. In *Red River Energy Inc.*, for example, the Trustee contemplated litigation regarding the recharacterization of the debt at the time he filed his application to employ MHKH; bankruptcy counsel was therefore a necessity. *Id.* Similarly here, the Order in the case at bar is a currently contentious and bankruptcy-specific issue; the Debtor appealed the Order before the Trustee filed the Second Application. [Finding of Fact Nos. 16 & 18]. Thus, outside bankruptcy counsel—and the attendant administrative costs to the estate—are justified as a necessity. The Trustee has met his

---

[11] There is nothing in the record to indicate the Trustee's hourly rate and Million's hourly rate; there is only a chart showing ranges of hourly rates. [Doc. No. 117-1 at 3]. Nevertheless, there is no doubt that given the Trustee's more than thirty years experience practicing bankruptcy law, his hourly rate is substantially higher than the hourly rate of a seven year bankruptcy lawyer like Million.

burden under this factor, as he has demonstrated that the employment of a bankruptcy attorney—like Million—is necessary to benefit the estate.

In the Second Application, the Trustee discusses several other areas in which he requires the assistance of counsel, including negotiations and litigation over, and the marketing and sale of, the Patent. [Finding of Fact No. 20]. These services require a background and experience in intellectual property law; yet the Trustee—as implied in the Second Application—has no such expertise. *See* [Finding of Fact No. 18]. As a result, the Trustee has met his burden to demonstrate the necessity of employing counsel to aid him in the intellectual property law-based services. The necessity of expending estate funds to hire an intellectual property attorney—like Hyland—is therefore satisfied.

Conversely, Million has absolutely no background in intellectual property law; rather, his area of expertise is limited to bankruptcy. [Finding of Fact Nos. 21 & 22]. The Trustee has failed to demonstrate how Million's employment as lead counsel—and therefore overseer of the intellectual property matters [Finding of Fact No. 22]—is necessary or appropriate.

     *ii.  Factor #2:  Names of the Attorneys the Trustee Wishes to Hire*

The Trustee has met this requirement by specifying Million and Hyland, both from MHKH, as the attorneys whose services he will primarily use. [Finding of Fact Nos. 18, 21, 22 & 23].

     *iii.  Factor #3:  Reasons for Selecting the Specific Attorneys Identified in the Second Application*

     (1) <u>The Reasons for Selecting Million to Oversee the Bankruptcy Matters are Adequate, but the Reasons for Selecting Million to Oversee the Patent Litigation are Inadequate</u>

The Trustee has met this requirement, with one exception, regarding Million, but has fallen short of meeting the requirement for Hyland. Specifically, Million has several years of

experience practicing in bankruptcy court. [Finding of Fact No. 21]. While the Trustee is a far more experienced bankruptcy attorney than Million—with thirty years of expertise [Finding of Fact No. 18]—Million's knowledge and background are sufficient to support the Trustee's proposed employment of Million on the bankruptcy-specific matters, particularly the appeal of the Order. *See* [Finding of Fact Nos. 21 & 22]; [Doc. No. 117-1 at 1]. Indeed, given that the Trustee's hourly rate is likely substantially more than Million's hourly rate, it makes economic sense for the Trustee to seek approval to retain Million. Million can handle the Debtor's appeal of the Order as competently as the Trustee, and Million can do so at a much lower hourly rate than the Trustee.

Million's experience to serve as the attorney-in-charge of any *patent* litigation, however, is insufficient. Million has no experience *whatsoever* in patent law. [Finding of Fact No. 21]; [Doc. No. 117 at 8–9, ¶ 27].

### (2) The Reasons for Selecting Hyland are Inadequate

Unlike Million, Hyland does have experience in patent law. [Finding of Fact No. 23]. He has handled thirty intellectual property law cases, and is more than sufficiently expert and experienced in patent *law*. In the case at bar, however, Hyland's knowledge of patent law is not the only required and relevant experience, and the Trustee has failed to demonstrate adequate reasons for selecting Hyland, either to litigate the intellectual property claims, or to offer counsel on these issues.

The Trustee has a fiduciary duty to maximize the value of the estate. *In re Bechuck,* 472 B.R. at 377. Thus, the Trustee cannot retain counsel whose inexperience or inability to actually try a lawsuit might lead the Trustee to settle cheaply "out of fear that his counsel will utterly fail at trial." *Id.* At the Hearing, Hyland admitted that he has only been to trial twice in his career.

[Finding of Fact No. 23]; [Doc. No. 117 at 9, n.1].  During each of these experiences, Hyland sat at counsel's table, and *never* in his career has he questioned a witness at trial.  [Finding of Fact No. 23]; [Tape Recording, 10/17/12 Hearing at 4:25:00–4:26:00 p.m.].  His trial skills are therefore inadequate for this particular Chapter 7 case.  Given the pending litigation involving the Patent [Finding of Fact Nos. 16 & 22], the Trustee needs to seek an attorney who has experience in trying patent lawsuits.

And, even if the Trustee seeks to retain Hyland only to obtain his counsel on the intellectual property issues relating to the estate—i.e., does not intend to retain Hyland to try any lawsuit—this Court still finds that Hyland's lack of actual "first chair" experience in the courtroom disqualifies him for this assignment.  [Finding of Fact No. 23].  To obtain the most valuable and competent advice on the pending Patent litigation and on any other claims concerning the Patent, the Trustee must seek counsel from a seasoned trial lawyer who has trial experience in patent litigation.  This attorney can best assess the Trustee's chance of prevailing in a full-blown trial and therefore to evaluate what action to take—i.e., to settle (and, if so, for what amount) or to go forward with trial.

Indeed, recently, the Trustee sought, and this Court approved, the retention of just such an attorney, Brett Wagner (Wagner).  [Doc. No. 158].  Wagner will provide the Trustee with an opinion on the value of the malpractice matters that are a part of the State Court Claims.  [Finding of Fact No. 9].  This Court approved Wagner because, as the Trustee knows, Wagner has tried numerous attorney malpractice lawsuits where he has successfully obtained judgments for his plaintiff/clients.  Thus, Wagner has the actual first chair courtroom experience that Hyland lacks, and Wagner, but not Hyland, is able to give the *best* opinion possible to the Trustee.

There is a second reason that Hyland's application fails under this factor.  In the Second Application, there is little reference to travel costs associated with Hyland's employment.  As it states, "[t]he majority of the work in this case will be handled by the *Houston* office . . . ." [Finding of Fact No. 22] (emphasis added); [Doc. No. 117-1 at 2].  It is only in the attached Exhibit A-1 of the Second Application that the Trustee indicates that Hyland is based in *Dallas*. [Finding of Fact No. 23]; [Doc. No. 117-1 at 1].  Hyland is therefore distant from this Court, the client (i.e., the Trustee), and the proposed lead counsel (i.e., Million)—who would direct the representation out of MHKH's Houston office.  [Finding of Fact No. 22].  As a result, Hyland's employment will likely require the estate to incur travel costs.

These travel expenses are unnecessary.  The Trustee must demonstrate that the proposed attorney will maximize the "tangible, identifiable and material benefit[s]" to the estate.  *Andrews & Kurth L.L.P. v. Family Snacks (In re Pro-Snax Distribs.)*, 157 F.3d 414, 426 (5th Cir. 1998); *In re Bechuck*, 472 B.R. at 376.  Yet, no such demonstration has been made; in the Second Application, the Trustee fails to explain why the proposed Dallas counsel (i.e., Hyland) is superior to representation by an attorney based in Houston.  *See* [Doc. No. 117].  Indeed, the Trustee could avoid these costs entirely by hiring a Houston attorney with first chair trial experience in patent litigation.[12]  Yet, at the Hearing, the Trustee admitted that he has not attempted to contact a single other firm.  [Tape Recording, 10/17/12 Hearing at 3:47:00–3:47:40 p.m.].  His failure to do so is unacceptable, and suggests that the Trustee has lost focus on his fiduciary duty to do what is in the best interest of the estate.

---

[12] For example, a quick Google search revealed 54 patent litigation attorneys in the Houston area.

*iv.   Factor #4:  Professional Services that the Attorneys Will Provide*

(1) <u>The Professional Services that Million Will Provide in the Bankruptcy</u>
<u>Matters are Well-Articulated, but the Professional Services that Million</u>
<u>Will Provide in the Patent Litigation Matters are Unclear</u>

With one exception, the Trustee has met this requirement regarding Million.  If limited to his expertise in bankruptcy matters, Million's representation is well-articulated, necessary and potentially beneficial to the estate.  Million's experience includes cases involving:  (1) designation of secured lenders as the debtor's corporate representative; (2) litigation to re-characterize a debt; (3) prosecution of a chapter 11 plan; and (4) fraudulent activity by the debtor.  [Doc. No. 117 at 8, ¶¶ 26–27]; *see also* [Finding of Fact No. 21].  He can assist by representing the Trustee in the pending appeal of the Order, as well as in potential other areas such as "analyzing, instituting and prosecuting actions regarding asset transfers, foreclosure sales, disclaimers, insider transactions and third party dealings, including, if appropriate, objections to discharge . . . [or] to assist the Trustee, where necessary, to negotiate and/or prosecute non-routine objections to claims and/or exemptions . . . ."  [Doc. No. 117 at 4–5, ¶ 16]; *see also* [Finding of Fact No. 22].

While the Trustee has articulated Million's role regarding the bankruptcy issues, the Trustee has not met his burden in establishing the role that Million would provide in the litigation and issues regarding the Patent.  The Second Application states that "[a]t this time [the Trustee also] contemplate[s] the need for an attorney to handle the pending intellectual property litigation," [Doc. No. 117 at 11, ¶ 32], as well as a "lead counsel" to oversee these matters [*Id.* at 4, ¶ 14].  [Finding of Fact No. 20].  Million does not have any experience in intellectual property law [Finding of Fact No. 21]; [Doc. No. 117 at 8–9, ¶ 27]; thus, to the extent that the Trustee requests that Million act as attorney-in-charge of litigation concerning the Patent [Finding of

22

Fact No. 22], the Trustee has failed to explain how Million will provide meaningful professional services in this matter.

(2) <u>The Professional Services that Hyland Will Provide are Ambiguous</u>

With respect to Hyland, the Trustee also fails to meet this requirement. The Trustee proposes to hire Hyland to handle the intellectual property matters "that may require litigation." [Finding of Fact No. 23]; [Doc. No. 117 at 9, at ¶ 29]. Yet, at the Hearing, the Trustee testified that he has not decided whether to proceed with litigation against any potential infringers of the Patent, and that he does not contemplate that Hyland or MHKH will prosecute the Patent litigation on behalf of the estate. [Tape Recording, 10/17/12 Hearing, at 3:07:00–3:10:00 p.m.; 3:42:00–3:43:30 p.m.]. The Trustee asserts that he simply has not decided what to do—and that he cannot decide without counsel (i.e., without Hyland's help).[13] [Tape Recording, 10/17/12 Hearing at 3:07:00–3:11:00 p.m.]. Thus, despite extolling Hyland's experience—including a representative list of Hyland's clients and services—in the Second Application [Doc. No. 117 at 9–10, ¶¶ 29–30], the Trustee has failed to sufficiently define Hyland's role; is Hyland to act as counselor or litigator?

The Trustee has failed to establish that Hyland is the most qualified to take on either role. In order to fulfill his role as a fiduciary, the Trustee must find the *best* counsel; and the best counsel that the Trustee could retain is from an attorney with first chair patent litigation experience. Without this experience, an attorney such as Hyland is not the most qualified

---

[13] Because the Court has not seen any time sheets of the MHKH attorneys who have performed the 80 hours of legal services, it is unclear how much of these 80 hours has been spent reviewing the documentation concerning the Patent and analyzing the strength of the claims relating to the Patent that are pending in the Harris County District Court. If, in fact, a substantial portion of these 80 hours has been spent reviewing such documentation and analyzing the Patent claims, then it would seem odd that MHKH has already expended such an amount of work on these issues, and yet the Trustee *still* remains unable to decide whether to proceed with the Patent litigation [Tape Recording, 10/17/12 Hearing at 3:09:00–3:10:00 p.m.].

23

counsel to assess the risks and rewards of a trial, or to expertly answer the most basic question before pursing litigation:  what kind of chance does the Trustee have here?  Years of boardroom negotiations simply do not substitute for courtroom persuasion; and presenting a settlement to opposing counsel is not the same as cross-examining a hostile witness in a courtroom.  Without courtroom experience, Hyland is not a Wagner-type attorney; he is not able to provide the Trustee with the best and most valuable advice necessary in this case.

Moreover, as previously discussed, Hyland has essentially no first chair trial experience. [Finding of Fact No. 23]; [Doc. No. 117 at 9, n.1].  He is therefore not the most qualified attorney that the Trustee can retain to prosecute any Patent infringement claims.  Only two of his thirty-plus patent lawsuits have proceeded to trial, and, as discussed above, neither of these two trials required Hyland to examine witnesses.  [Finding of Fact No. 23].  Accordingly, it is unclear how Hyland would play a role in this pursuit.

####### v.   *Factor #5: Proposed Fee Arrangement*

The Trustee has not met this requirement as to either Million or Hyland.  In the Second Application, the Trustee discusses at length—with visual aids—the range of hourly rates of MHKH lawyers, as well as how their rates compare to other firms.[14]  [Doc. No. 117-1 at 1–3].

---

[14] The "range of rates" chart used by the Trustee reflects that the hourly rates of the attorneys are as follows:

| Firm | Attorney (Range of Rates) |
|---|---|
| MHKH | $375-670 |
| Thompson & Knight, LLP | $265-$670 |
| Diamond McCarthy | $235-550 |
| Porter & Hedges, LLP | $225-550 |
| King & Spaulding, LLP | $330-575 |
| Gardere Wynne Sewell, LLP | $195-595 |
| Weil Gotshal & Manges, LLP | $399-900 |

Yet, these rates are quite high. According to *its own list*, MHKH's range of hourly rates for its attorneys is the second highest, with only Weil, Gotshal & Manges LLP (Weil Gotshal) charging more. [*Id.*]. Moreover, there is *no* disclosure of the specific hourly rates of either Million or Hyland. The discussion of this factor is therefore incomplete. For these reasons, the Trustee has failed to meet his burden.

> vi. *Factor #6: People with Connections to the Debtor, the Creditors, or Any Other Party in Interest*

The Trustee has not met this requirement in regards to Million or Hyland. First, in the Second Application, there is only a sparse mention of this issue, and it focuses on MHKH's relationship with the estate's creditors. [Doc. No. 117 at 5, ¶ 18]. As discussed above, the Trustee and MHKH have not analyzed any connections that MHKH might have with its clients who might well be negatively affected by the litigation concerning the Patent; a more thorough conflicts check is required.

Additionally, the Trustee represents in the Second Application that his relationship with MHKH is evidence of MHKH's qualification to undertake this representation. [Doc. No. 117 at 26, ¶ 26]. This Court disagrees. The selection of attorneys by trustees is a "breeding ground of cronyism," and a personal relationship is irrelevant to a professional one. *In re Bechuck,* 472 B.R. at 377. The relationship between the Trustee and his firm actually "undermines the Application because it could be viewed as a conflict between the proposed attorney and the Trustee."[15] *Id.*

---

[15] The trustee is, after all, a fiduciary to the estate, and "is responsible for monitoring all fees requested in a case, and has a statutory duty to object to all inappropriate fees." *Applications of Kurtzman,* 220 B.R. at 804. A conflict can therefore develop if the trustee's own firm is retained as his counsel because the trustee may be interested in maximizing fees on behalf of his firm. This conflict may be particularly acute in situations where the trustee is also a partner or a shareholder in the firm that he seeks to employ. *Id.* at 804–05. *Kurtzman* aptly describes this conflict:

**b. The Trustee has Not Satisfied Either of the Two Additional *Bechuck* Factors With Respect to Million and Hyland**

In addition to the Rule 2014(a) factors, *Bechuck* identified two further requirements that must be satisfied to approve an application for employment. These include: (1) a discussion of how successful Million and Hyland have been in undertaking such tasks in the past; and (2) a discussion of how often Million and Hyland have undertaken the specific tasks proposed. *In re Bechuck,* 472 B.R. at 376–77.

    *i.   Factor #1:   How Successful Million and Hyland Have Been in Undertaking Such Tasks in the Past*

In order to convince this Court that Million and Hyland are sufficiently qualified to undertake the proposed representation, the Trustee must articulate why each attorney is the "best choice" to represent the Chapter 7 estate; that is, why it is likely that this particular attorney will help the Trustee obtain one of the primary goals of the Code, i.e., to maximize the value of estate assets in order to pay allowed claims. *Id.* at 376. Generic descriptions of the proposed attorney's experience are not sufficient—such as stating that the proposed counsel is "uniquely qualified" [Doc. No. 117 at 4, ¶ 14], or that the proposed firm has a "personal friendship" with the trustee fostering "confidence and trust in the [proposed firm's] competence," *In re Bechuck,* 472 B.R. at 376, or that the proposed attorneys have a "track record of producing quality results for the

---

Human nature being what it is, courts have recognized the dangers attendant to a fiduciary's retention of himself [i.e., the law firm where he/she is a partner] to serve as his own paid employee . . . The Second Circuit has noted that a trustee may not have "the same objective and critical attitude toward the amount and quality of effort being put forward by his own law firm that he would toward another" . . . "A trustee who is represented by his own firm disables himself from offering such assistance with respect to the application for counsel fees. Thus, although the trustee is not prohibited from utilizing his own firm, to do so causes serious problems when compensation is sought."

*Id.* at 804 (citing *Knapp v. Seligson*, 361 F.2d 164, 168 (2d Cir. 1966); *In re Cee Jay Discount Stores*, 171 B.R. 173, 176 (Bankr. E.D.N.Y. 1994)).

Trustee," [Doc. No. 117 at 8 , ¶ 26]. Not only are such generalizations useless in assisting the Court in making a determination whether the proposed attorney is the best attorney for the specific tasks to be performed, but the sweeping pronouncement that the attorney has represented the Trustee in the past (or such similar language) can stink of unseemly cronyism. *In re Aladdin Petroleum, Co.*, 85 B.R. 738, 740 (Bankr. W.D. Tex. 1988). What counts is time-tested competence in the specific tasks at hand that has produced tangible, identifiable, and material benefits for the estate. *See In re Pro-Snax Distribs.*, 157 F.3d at 426.

(1) Million's Past Successes are Sufficient to Approve the Application to Employ Him to Handle the Bankruptcy Matters, but are Insufficient to Approve His Oversight of the Patent Litigation Matters

In the case at bar, the Trustee details at length MHKH's achievements, particularly before the undersigned judge. The Second Application gives several specific examples of bankruptcy cases in which Million produced "quality results." [Doc. No. 117 at 8, ¶ 26]. For example, in *In re Supplemental Spot*, Bankruptcy Case No. 06-35903, the Trustee sought to employ MHKH after a creditor filed an adversary proceeding alleging fraud and civil conspiracy against the debtor. Litigation of bankruptcy issues was likely at the time of the application, and indeed, Million and MHKH went on to successfully prosecute the debtor's complicated Chapter 11 reorganization and fraudulent transfer claims. [Doc. No. 117 at 8, ¶ 26].

Similarly, here, bankruptcy litigation is evident, particularly involving the pending appeal of the Order. [Finding of Fact Nos. 16 & 22]. The Debtor appealed this Order before the Trustee filed the application to employ Million [Finding of Fact Nos. 16 & 18], and it is probable that Million's involvement in MHKH's prior successes—including *Supplemental Spot*—can provide a material benefit to the estate as this case proceeds. Thought the Court would prefer a

more detailed explanation of *Million-specific* accomplishments,[16] the Second Application is, nevertheless, sufficiently detailed to give this Court faith in Million's bankruptcy qualifications for the case at bar, and that he can maximize value for the estate. *Cf. In re Bechuck*, 472 B.R. at 376 (finding a single conclusory statement that the attorneys previously represented the Trustee in numerous chapter 7 and 11 proceedings to be inadequate).

Conversely, Million's intellectual property experience is clearly not adequate—as the Trustee, in fact, seems to admit. *See* [Doc. No. 117 at 8–9] ("With the exception of intellectual property litigation, Mr. Million has handled matters that require him to provide the services described in each of the categories that make up the contemplated scope of services in the Case."). Absent *any* intellectual property experience—much less "success"—this Court is wholly unsatisfied that Million is the best candidate to act as attorney-in-charge of this facet of the representation. *See* [Finding of Fact Nos. 21 & 22].

(2) <u>Hyland's Past Successes are Insufficient to Approve the Application to Employ Him to Handle the Patent Litigation Matters</u>

The Court is also unconvinced about Hyland's candidacy. In the Second Application, the Trustee details nine intellectual property cases in which Hyland was actively involved. [Doc. No. 9–10, ¶ 29]. The descriptions of these cases do not indicate Hyland's success rate. [Doc. No. 9–10, ¶ 29]. Rather, the Trustee merely describes the type—but not the outcome—of each

---

[16] The Second Application gives three examples of cases in which MHKH represented the Trustee before the undersigned judge and produced positive results (i.e., *In re Red River Energy Inc.*, 409 B.R. 163 (Bankr. S.D. Tex. 2009), *In re Supplemental Spot, LLC,* Bankruptcy Case No. 06-35903 and *In re Latta,* Bankruptcy Case No. 05-91570). The Second Application then goes on to state that Million was involved in each of these cases. It is unclear from this statement what role Million played in these matters. The Court notes, however, that Million was an attorney-of-record in *Red River, Supplemental Spot* and *Latta,* and appeared before this Court in *Red River* and *Supplemental Spot.* The Second Application does not describe any additional cases in which Million was involved.

case. Based on this incomplete information, the Court is not persuaded that Hyland will likely be able to maximize the value of the assets of this Chapter 7 estate.

To reiterate, the Trustee needs a Wagner-type trial lawyer for the Patent litigation. This kind of attorney, experienced and successful in this type of litigation, can give the Trustee a more thorough opinion about the merits—and therefore the value—of the Patent and the claims associated therewith. Stated differently, a Wagner-type lawyer can analyze the Patent and its claims with battle-tested authority, and thereby counsel the Trustee on his likelihood of success in all of the matters related to the Patent. Because such counsel will help the Trustee maximize the value of the estate's assets, this is the "best choice" of attorney.[17]

  ii. *Factor #2: How Often Million and Hyland Have Undertaken the Specific Tasks Proposed*

Similar to the first factor, this second one seeks to ascertain the proposed counsel's particularized skills. An inexperienced or inferior attorney may embolden opposing counsel to cheapen a proposed settlement. *In re Bechuck*, 472 B.R. at 376–77. This factor is therefore grounded in the practical realities of a negotiation: an opposing counsel is likely to exploit any actual or perceived weakness in the Trustee's choice of counsel. *Id.* As a fiduciary of the estate, the Trustee is charged with demonstrating to this Court that he has proposed counsel who will maximize the value of the estate's assets. *Id.* Thus, the Trustee must show how Million and Hyland are specifically qualified to drive the hardest bargain for the estate; and, if settlement is not obtained, to try the suit.

---

[17] The Court wishes to emphasize that the Second Application is being denied without prejudice to refiling. Thus, if the Trustee, after reviewing this Memorandum Opinion, actively searches for the type of trial attorney described herein for the Patent litigation and issues, and is unable to find such an attorney, the Trustee has the right to once again seek this Court's approval to retain Hyland on the grounds that the Trustee has been unable to find an any trial attorney with patent litigation experience who is willing to represent the estate. Under these circumstances, it might well be that Hyland would be the "best choice" of attorney.

The Trustee's discussion of this second factor is too generic. The Second Application states that "the Trustee is confident that [MHK] is well qualified to undertake any and all assignments contemplated by the scope of the work set forth in [the Second Application]. As described in Exhibits A and A-1, [MHK] routinely represents both chapter 7 and chapter 11 trustees and has a consistent track record of providing quality legal work." [Doc. No. 117 at 11, ¶ 31]. Under this factor, there is no discussion of the number of times that Million and Hyland have actually done what is contemplated in this particular case at bar. *See In re Bechuck*, 472 B.R. at 377.

Yet, piecing together these statements with the Second Application's earlier discussion of the first *Bechuck* factor, this Court concludes that the Trustee has adequately proven that Million's skills are sufficient to enable him to undertake the proposed bankruptcy matters. The Trustee describes both the specific bankruptcy tasks that Million will undertake, as well as three relevant bankruptcy cases—and their outcomes—in which Million participated. [Doc. No. 117 at 8–9, ¶¶ 26–27]. While the Court would prefer an even more detailed analysis of Million's experience in, for example, defending an order on appeal, this description is sufficient. It both persuades this Court *and* discourages "opposing counsel to make low ball settlement offers." *In re Bechuck*, 472 B.R. at 377.

On the other hand, Million's intellectual property law experience is non-existent, giving him an immediate and insurmountable disadvantage at the bargaining table. [Finding of Fact No. 21]. Nor, as importantly, is his inexperience offset by Hyland's expertise. Neither attorney has tried an intellectual property dispute to its conclusion. [Finding of Fact No. 23]. A specialization in intellectual property law simply does not equal a specialization in first chair trial

30

experience, and as a result, Hyland is simply not the best counsel that the Trustee could propose for this case.

To be sure, there may be cases where first chair intellectual property litigation experience is unnecessary. This is *not* such a case. The Second Application specifically contemplates Patent litigation [Finding of Fact No. 20]; indeed, there is a pending suit in state court which involves, in part, claims relating to the Patent [Finding of Fact Nos. 9 & 15]. Just as the Trustee has sought experienced, trial-tested counsel—outside of his firm—to represent him in the malpractice claims, so should the Trustee seek to retain experienced, trial-tested counsel to represent him in the claims involving the Patent. [Finding of Fact Nos. 15 & 20]; [Doc. No. 133].

In sum, the Trustee has failed to satisfy the necessary requirements set forth in Rule 2014 and *Bechuck*. In regards to Million, and under Rule 2014, the Trustee has not satisfied, in total, factors five and six, and in part, factors one, three and four. The Trustee has not disclosed the proposed hourly rate for Million, and has also neglected to demonstrate that Million is suitably skilled to undertake the role as attorney-in-charge of the Patent litigation. Finally, a more thorough conflicts check needs to be done within MHKH to focus on whether any clients of MHKH could be affected by the estate's interests in the Patent and the PMA.

Similarly, under *Bechuck*, the Trustee failed to demonstrate Million's prior patent experience or any successes in patent litigation, thereby failing—in part—to satisfy both of these factors. In regards to Million's ability to undertake the pure bankruptcy matters, on the other hand, the Trustee has complied with both of the additional requirements under *Bechuck*.

In regards to Hyland, the Trustee has failed to satisfy factors three, four, five and six of Rule 2014, as well as both of the additional criteria articulated in *Bechuck*.[18]

## D. The Trustee has Failed to Satisfy § 327(d), as Articulated in the *Kurtzman/Interamericas* Cases

In addition to satisfying the factors laid out in 11 U.S.C § 327(a), as well as Rule 2014 and *Bechuck*, the Trustee, because he wants to retain his own law firm, must *also* satisfy the "best interest of the estate" requirement imposed by 11 U.S.C. § 327(d). This section states that "[t]he court may authorize the trustee to act as attorney . . . for the estate if such authorization is in the best interest of the estate."[19]   11 U.S.C. § 327(d); *see also In re Gem Tire*, 117 B.R. at 877 ("Counsel employed pursuant to § 327(a) must pass the 'no adverse interest' and 'disinterestedness' tests. For trustees who wish to employ themselves as counsel, the trustee must *also* show that the best interest of the estate of § 327(d) would be served thereby.") (emphasis added)).

In *Applications of Kurtzman,* the court explained this section, stating that:

> A trustee should only be allowed to retain his law firm upon a showing of the potential benefit to the fiduciary estate, and then, only after the Court is satisfied that the fiduciary will not succumb to the various temptations presented. Trust, rectitude and honor, as well as professional competency, must be demonstrated to support a Court's confidence in such risky appointments.

220 B.R. at 805; *In re Kurtzman,* 220 B.R. at 803.

The "best interest of the estate test" is a relatively vague standard. The court in *Interamericas* set out nine factors to consider, and although none of these factors is dispositive,

---

[18] See footnote 17.

[19] The appointment of the Trustee as counsel for the estate is the functional equivalent of the appointment of the Trustee's law firm. *In re Butler Industries, Inc.*, 101 B.R. 194, 196 (Bankr. C.D. Cal. 1989). Thus, to employ the Trustee's firm as counsel for the estate, the Trustee must satisfy not only 11 U.S.C. § 327(a), but also 11 U.S.C. § 327(d). *See id.* (applying 11 U.S.C. § 327(d) to an application to employ the trustee's firm).

the undersigned judge accepts and adopts them, and will apply them here. These factors include the following: (1) the qualifications of the members of the firm compared to the complexity of the case; (2) whether the firm is regularly hired by others to handle similar litigation; (3) whether the anticipated litigation predominantly involves issues of bankruptcy law with which the law firm has particularized expertise; (4) whether the time commitment required to handle the case is consistent with the size of the firm and the balance of the firm's time commitments; (5) whether only a nominal amount of work must be performed; (6) the availability of other qualified firms to handle the case; (7) the rates charged by the firm compared to the rates charged by other qualified firms; (8) whether there will be material cost savings to the estate; and (9) other case-specific factors. *In re Interamericas*, 321 B.R. at 834. When considering these factors, the facts weigh against allowing the Trustee to hire his own firm in this case.

1. Analysis of the Factors Set Forth in *Interamericas*

**a.    Factor #1:  Qualifications of the Members of the Firm Compared to the Complexity of the Case**

The pure bankruptcy law matters in the case at bar are not nearly as complex as the Patent and malpractice matters [Finding of Fact Nos. 11 & 17]; Million has the necessary experience, qualifications and success rate to handle the anticipated bankruptcy issues. [Doc. No. 117-1 at 1]. Over his seven years of practicing bankruptcy law, he has appeared in several cases before this Court, and has produced identifiable, material and tangible benefits to these estates. [Finding of Fact No. 21]. Based on his qualifications, as well as the apparently limited scope of pure bankruptcy issues—which are relatively routine—related to this particular Chapter 7 estate, this factor weighs in favor of approving Million as counsel for the Trustee. However, this factor weighs against approving Million as to serving as attorney-in-charge of any matters relating to the Patent; he simply does not have any qualifications in intellectual property law.

33

Hyland's limited trial experience, however, weighs against his employment. [Finding of Fact No. 23]. While the Second Application argues that patent trials are rare[20] [Doc. No. 117 at 9], in the two trials in which he has appeared, Hyland did not examine any witnesses or make any arguments to the court. [Finding of Fact No. 23]; [Tape Recording, 10/17/12 Hearing at 4:25:00–4:26:00 p.m.]. Here, considering the "complexity of the [Patent] issues involved," [Doc. No. 117 at 2, ¶ 1], plus the fact that there is pending litigation involving the Patent, Hyland's limited trial experience would likely not be in the best interests of the estate. A Wagner-type attorney, with a breadth and wealth of first chair trial experience, would be better able to provide counsel to the Trustee so that the value of the estate's assets relating to the Patent can be maximized.

> **b.      Factor #2:  Whether the Firm is Regularly Hired by Others to Handle Similar Litigation**

According to the Second Application, other clients, including other trustees, frequently hire MHKH to handle bankruptcy and intellectual property issues. [Doc. No. 117 at 9, ¶¶ 28, 30]. As a result, this factor weighs in favor of employing both Million and Hyland.

The Second Application also mentions that the Trustee has frequently used his own firm in other bankruptcy cases as his counsel. *See* [*Id.* at 8]. This fact does *not* weigh in favor of finding that MHKH's employment is in the estate's best interest in the case at bar. Not only is each case unique, requiring different areas of expertise, *see In re Interamericas*, 321 B.R. at 834 ("[A] separate showing of best interest must be made in every case in which a trustee seeks to retain his own firm."), but the fact that the Trustee has frequently used his firm in the past

---

[20] It is arguable that "patent trials are rare," but even if they are, this does not alleviate the Trustee's duty to attempt to retain an attorney who has first chair experience actually trying patent lawsuits. After all, even if patent trials are rare, they do nevertheless occur; and if the claims owned by this Chapter 7 estate relating to the Patent need to be tried, then the Trustee will need a trial-tested attorney to represent the estate.

suggests that he indiscriminately chooses MHKH without reflecting on the best interests of each individual case. No showing has been made that MHKH is the "best" qualified. *Id.* Instead, at the Hearing, the Trustee called his firm his "default choice." [Tape Recording, 10/17/12 Hearing at 4:47:00–4:47:30 p.m.]. This sort of slapdash analysis is not sufficient to support hiring MHKH, Million, or Hyland.

      c.      **Factor #3:    Whether the Anticipated Litigation Predominantly Involves Issues with which the Law Firm has Particularized Expertise**

MHKH is a very competent bankruptcy firm, and this case will involve bankruptcy issues. *See* [Doc. No. 117 at 9, ¶ 28] (detailing several cases in which MHKH provided quality representation). Million is a seven-year bankruptcy attorney who frequently handles bankruptcy issues similar to those likely to arise in the case at bar. *See* [Finding of Fact No. 21]; [Doc. No. 117-1 at 1] (discussing Million's experience and the firm's expertise). For this reason, this factor weighs in favor of Million's representation of the bankruptcy estate.

Regarding the Patent litigation, however, Million does not have particularized expertise. [Finding of Fact No. 21]. And, although Hyland does have expertise in patent *law*, his experience is too dissimilar to what is contemplated in the case at bar. [Finding of Fact No. 23]. At the Hearing, the Trustee testified that he does not intend to retain Hyland to prosecute any claims regarding the Patent. Rather, the Trustee stated that he seeks to consult with Hyland to determine if litigation is the best course for the estate. [Tape Recording, 10/17/12 Hearing at 3:07:00–3:11:00 p.m.; 3:42:00–3:43:30 p.m.]. Yet, Hyland's experience is almost devoid of trial experience and thus Hyland does not have the Wagner-type ability to assess the risks and advantages of trial. [Finding of Fact No. 23]. He is therefore not the best attorney both to counsel the Trustee regarding the value of the claims associated with the Patent *and* to try the

pending lawsuit.  *See* [Finding of Fact Nos. 9 & 15].  For this reason, this factor weighs against Hyland's representation.[21]

> **d.**    **Factor #4:  Whether the Time Commitment Required to Handle the Case is Consistent with the Size of the Firm and the Balance of the Firm's Time Commitments**

The Trustee has not estimated the length of time that he expects either Million or Hyland to expend during their respective representations.  Instead, the Trustee merely states that he "anticipates only a nominal amount of work must be performed," and that, in the event of a more complex case, MHKH "has more than 100 lawyers and 20 legal assistants in its three offices." [Doc. No. 117-1 at 1].  The Trustee is "confident that [MHKH] is well qualified to undertake any and all assignments contemplated by the scope of the work." [Doc. No. 117 at 11, ¶ 31].

This description is too generic.  It does not address the scope of the representations for either Million or Hyland, or the balance with their other time commitments.  Yet, it is clear that this is "not a case where only nominal work is anticipated."  *In re Interamericas*, 321 B.R. at 835.  MHKH has already exhausted 80 hours of billable energy on this case.  [Finding of Fact No. 19].  Thus, while there is no reason to believe that MHKH cannot competently handle the time commitment required, "the Court declines to make such an assumption under the circumstances."  *In re Interamericas*, 321 B.R. at 835.  It is the Trustee's burden to affirmatively satisfy the Court on this issue, and he has not done so.  The Court finds that this factor weighs against approval of either Million or Hyland.

---

[21] See footnote 17.

e.      **Factor #5:   Whether Only a Nominal Amount of Work Must be Performed**

MHKH has already worked on the case for almost eight months, exceeding any possible definition of "nominal work."[22]  [Finding of Fact No. 19].  The cost has also already surpassed the resources and assets available for payment in the estate.  *See* [Tape Recording, 10/17/12 Hearing at 3:34:00–3:35:40 p.m.] (the Trustee admitted there are no funds to pay these bills right now); *see also* [Finding of Fact Nos. 11 & 17].  The only sources of possible funds are the rights to the Patent and the PMA, and the State Court Claims.  [Finding of Fact Nos. 11, 15 & 17]; [Tape Recording, 10/17/12 Hearing at 3:00:27 p.m.] (the Trustee called the Patent asset "of value"); [Doc. No. 117 at 3, ¶ 8] (calling the assets "potentially of substantial value").  It therefore seems likely that future representation in at least the Patent litigation will take considerable time and resources.  Indeed, it apparently already has.  [Finding of Fact Nos. 15 & 19].  This factor weighs against approval of Hyland's representation.

Because of the nature of the assets of the bankruptcy estate, Million's representation *could* be "nominal"—*if* he were limited to the pure bankruptcy matters alone (such as filing a motion to sell the estate's interest in the Patent and the PMA).  *See* [Finding of Fact Nos. 11 & 17] (estimating the total value of the Debtor's personal assets in the estate to be $0.00).  However, the Trustee currently seeks to employ Million to oversee *both* the Patent and bankruptcy matters.  [Finding of Fact No. 22].  Because the Court cannot conclude that Million's proposed activities—as set forth in the Second Application—are sufficiently nominal, this factor also weighs against approval of Million's employment.

---

[22] The amount is, in fact, not listed in the Second Application.  Instead, at the Hearing, the Trustee stated that since March of 2012, MHKH has performed 80 hours of legal services, representing $35,000 in value.  [Finding of Fact No. 19]; [Tape Recording, 10/17/12 Hearing, at 3:12:00–3:12:50 p.m.].  Beyond this value of legal services, the Trustee did not delineate any expenses incurred by MHKH.

f.      **Factor #6:  The Availability of Other Qualified Firms to Handle the Case**

In the Second Application, the Trustee wholly fails to discuss other firms' qualifications to handle the bankruptcy portion of the case at bar.  *See In re Interamericas*, 321 B.R. at 836 (finding that such a showing is *required* for approval of an employment application where the Trustee seeks to retain his own firm).

While the Trustee addresses what he believes to be the likely unwillingness of other firms to handle the Patent litigation issues, this discussion is equally insufficient.  For example, in the Second Application, the Trustee represents that other firms may be reluctant to handle the Patent litigation because they would refuse to work *pro bono* and would not undertake a case where compensation is not certain.  [Doc. No. 117-1 at 2–3].  "Only the cases with money in the bank are viewed by outside counsel as 'good' and therefore, acceptable cases.  MHKH agreed to accept representation in this case, despite the distinct possibility that this is not a 'good' case." [*Id.*].

There is no basis for these assertions.  MHKH is not doing the Trustee a favor by agreeing to this representation.  Indeed, at the Hearing, and in the Second Application, the Trustee and MHKH admitted that the Patent has "value."  [Tape Recording, 10/17/12 Hearing at 3:00:27 p.m.].  Moreover, the Trustee acknowledged that he has not contacted a single other firm to offer the opportunity to represent the estate.  [*Id.* at 3:47:00–3:47:40 p.m.].  Instead, the Trustee merely asserts that MHKH is "uniquely qualified" to undertake this litigation.  [Doc. No. 117 at 4, ¶ 14].  Yet, a rudimentary search revealed at least fifty-four Houston firms that perform patent litigation work.  This is not the definition of "unique."[23]

_____

[23] "Unique:  Being the only one: sole."  MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1288 (10th ed. 2001).

If the Trustee files a third amended application to employ MHKH, the Trustee must first check the availability of other firms to handle the bankruptcy and the Patent matters in the case at bar, and then discuss in the amended application why the Trustee still believes that MHKH is the best firm to retain for these matters. The Court notes that although MHKH has several seasoned, trial attorneys, the Trustee selected Wagner—an attorney *not* practicing at MHKH—to represent the estate in the malpractice claims. The Trustee therefore took the time to check into attorneys with malpractice experience outside of his own firm. The Trustee needs to do the same type of search for non-MHKH attorneys who have expertise in bankruptcy and patent litigation.

> **g.    Factor #7:   The Rates Charged by the Firm Compared to the Rates Charged by Other Qualified Firms**

In the Second Application, the Trustee presents a spreadsheet of the range of hourly rates charged by six similar firms.[24]  [Doc. No. 117-1 at 3].  This table, which is meant to show the reasonableness of MHKH's fees, actually reveals that the hourly rates of the attorneys at MHKH are only lower than one firm, Weil Gotshal[25]; the other four have a lower range of rates.  [*Id.*].  Thus, this chart argues against approval of the Second Application.  Being the most expensive does not necessarily mean that it is in the "best interest of the estate" to retain the firm.

Further, the chart does not say what the specific hourly rates of Million and Hyland will be.  The Trustee also fails to compare the rates of those attorneys at other firms who, like Million and Hyland, practice bankruptcy law and intellectual property law, respectively.[26]  If the Trustee

---

[24] See footnote 14 to review the "range of rates" chart.

[25] MHKH is a Texas-based firm with only 100 attorneys [Doc. No. 117-1 at 1], whereas Weil Gotshal is an international firm with over 1,200 attorneys.  It is no surprise (although not necessarily justifiable) that the rates of Weil Gotshal are more expensive than the rates of MHKH.

[26] There is little question that the Trustee could, with relative ease, obtain the specific hourly rates of attorneys at other firms with similar experience and expertise as Million and Hyland.  For example, the Trustee could check the fee applications of other firms that have been filed in numerous cases pending in the United States Bankruptcy Court

chooses to file an amended application seeking to employ MHKH, the Trustee must set forth the hourly rates of each attorney whom the Trustee proposes to use and whether his/her hourly rate is comparable to attorneys with similar experience at other firms.[27]

In sum, this factor weighs against approval of both Million and Hyland.

### h.       Factor #8:  Whether there Will be Material Cost Savings to the Estate

In *Interamericas*, the trustee sought to hire his firm—which included only himself and his spouse—as his counsel.  321 B.R. at 836.  He maintained that as a result he could obtain a substantial cost-savings to the estate.  *Id.*  The court denied the trustee's application.  *Id.*  There was no showing that the trustee's firm, or his wife, would be more efficient than other firms or would provide any other "material cost savings to the estate."  *Id.*

In the case at bar, the Trustee has similarly failed to demonstrate that either Million or Hyland's employment would result in material savings to the estate.  First, despite the fact that both Million and Hyland practice law at the same firm as the Trustee, the Trustee proposes to hire a firm that is, according to MHKH's data, the second most expensive.  [Doc. No. 117-1 at 3].  The Trustee needs to compare, for example, Million's hourly rate to the hourly rates of attorneys at other firms with similar experience and background.

And, the proposed patent lawyer (i.e., Hyland) is located in Dallas [Finding of Fact No. 23]; therefore, there will likely be travel costs associated with his representation.  With the number of Houston intellectual property firms available—fifty-four at last count—the Trustee's

---

for the Southern District of Texas.  Those fee applications must attach invoices, and the invoices show the hourly rates of the attorneys who have been performing services for the estate.

[27] The Court would also encourage the Trustee to compare the hourly rates of the specific MHKH attorneys he wants to retain not only with the hourly rates of attorneys with similar experience and backgrounds at the very large firms referenced in his "range of rates" chart, but also with the hourly rates of similarly situated attorneys at much smaller "boutique" firms (i.e., firms who have fewer than 25 lawyers, for example).

choice does not demonstrate that MHKH would be more efficient and economical than other firms. Indeed, hiring out-of-town counsel is the converse of cost-savings. This factor therefore weighs against approval of the Second Application.

> i.       **Factor #9: Other Relevant Factors**

There are other factors the Court can consider when determining what is in the best interest of the estate. *In re Interamericas, Ltd.*, 321 B.R. at 836. For example, Reaud (counsel for the Debtor) argues that this Court should consider that the Debtor will not cooperate with the Trustee or MHKH because the Debtor does not approve of the Trustee's proposed retention of MHKH.[28] [Doc. No. 119]. The Debtor, however, cannot merely refuse to cooperate; the Debtor, in fact, has a duty to cooperate with the Trustee. *Agresti v. Rosenkranz (In re United Utensils Corp.)*, 141 B.R. 306, 309 (Bankr. W.D. Pa. 1992); *see also In re Cochener*, 360 B.R. 542, 580 (Bankr. S.D. Tex. 2007) *aff'd in part, rev'd in part*, 382 B.R. 311 (Bankr. S.D. Tex. 2007) *rev'd*, 297 F. Appx 382 (5th Cir. 2008); *In re Stinson*, 269 B.R. 172, 176–77 (Bankr. S.D. Ohio 2001).

Case law has not addressed a debtor's duty to cooperate with the trustee's special counsel; however, this duty is a reasonable and foreseeable extension of the rule against refusing to cooperate with the trustee. If a debtor has a duty to cooperate with the trustee, then it follows that a debtor has a duty to cooperate with any *representative* of the trustee, including special counsel. This factor therefore does not control the Court's analysis of the Second Application;

---

[28] The Debtor does not like MHKH because the Trustee is a partner at this firm, and it was the Trustee who successfully joined in with the Defendants in opposing the Debtor receiving any benefit from the Patent or the PMA. For a more detailed discussion of the arguments made by the Defendants and the Trustee as to why the Debtor should not receive any benefit, see this Court's Motion to Strike Memorandum Opinion, *In re Jackson*, No. 06-36268, 2012 WL 3071218 (Bankr. S.D. Tex. July 27, 2012).

the Debtor has no choice but to cooperate with the Trustee and whichever approved firm represents him.

In sum, in applying the *Kurtzman/Interamericas* holdings, five of the nine factors weigh against approval of Million: factors four, five, six, seven, and eight. Factors one and three also weigh against approval of Million as attorney-in-charge of the Patent matters. Seven of these factors weigh against approval of Hyland; only factors two and nine weigh in favor of approval of his employment. In particular, the Trustee has failed to demonstrate that retaining MHKH is in the estate's best interest for the following reasons: (1) Hyland's qualifications are not commensurate with the trial skills needed to properly assess the value of the claims associated with the Patent and to actually try these claims; (2) Million and Hyland's expected time commitment is more than nominal; (3) Million and Hyland's proposed duties might possibly be performed by attorneys at other available firms; (4) the hourly rates of MHKH's attorneys are high compared to those charged by other firms; and (5) employing Hyland and Million will not result in material cost savings to the estate. Together, these factors presently weigh against allowing the Trustee to hire his own firm. For all of these reasons, the Court concludes that the Trustee has failed to meet his burden of proof in establishing that it is in the best interest of the estate under 11 U.S.C. § 327(d) to hire either Million or Hyland.

It may be possible to rectify these deficiencies, but any amended application should specifically address the deficiencies which this Court has reviewed herein. For all of these reasons, the Court denies the Second Application without prejudice to refiling.

**E.     The Court Denies With Prejudice the Trustee's Request to Retain MHKH on a *Nunc Pro Tunc* Basis**

In addition to requesting this Court to approve his retention of MHKH, the Trustee requests approval *nunc pro tunc*, effective March 1, 2012. [Finding of Fact No. 19]; [Doc. No.

117 at 11, ¶ 33].  Bankruptcy Local Rule 2014-1(b) requires an application for employment to be filed within thirty days of the commencement of services.  If the application is filed within this thirty-day deadline, then the application, if approved, is automatically effective as of the first day that services were rendered by the professional who has been approved.  Stated differently, a trustee has a thirty-day grace period to file an application to employ a professional (such as an attorney) for the estate.  *See In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir. 1983) ("[T]he bankruptcy statute and rules require court approval for employment of an attorney for the debtor's estate and contemplate that such approval will be required in advance of such employment . . . .").

     If a trustee fails to file an application by this thirty-day deadline, then if the application is approved, it will not be effective as of the first day that services were rendered, but rather will be effective as of the date that the application was filed.  Bankruptcy Local Rule 2014-1(b), however, provides an exception to this result.  The Rule allows for *nunc pro tunc* relief under certain circumstances.  Any *nunc pro tunc* application must include:  (1) an explanation of why the application was not timely filed (i.e., within the thirty-day deadline); (2) an explanation why the order authorizing employment is required *nunc pro tunc*; and (3) an explanation, to the best of the applicant's knowledge, as to how approval of the application may prejudice any parties-in-interest.  The Trustee filed the Second Application on September 12, 2012, more than *six months* after MHKH began providing its services to the Trustee.  [Finding of Fact No. 18].  The Trustee must therefore comply with the Local Rule 2014-1(b) requirements if this Court is to grant him the *nunc pro tunc* relief that he requests.  *See In re Triangle Chemicals, Inc.*, 697 F.2d at 1289 ("[W]here through oversight the [trustee] has neglected to obtain such prior approval [of an application to employ a professional for the estate], but [the professional] has continued to

perform services . . . the bankruptcy court retains equitable power in the exercise of its sound discretion, *under exceptional circumstances*, to grant such approval *nunc pro tunc*, upon proper showing . . . .") (emphasis added)).

In the Second Application, the Trustee gives three reasons for his failure to file the application for employment to retain MHKH within the thirty-day period required by Local Rule 2014-1(b). The Trustee's first excuse for his delay is the *Bechuck* ruling. The Trustee began to prepare the First Application to employ MHKH in April of 2012. [Doc. No. 117 at 12, ¶ 34]. However, on April 4, 2012—the day that the Trustee planned to file the application to employ MHKH—this Court issued *Bechuck*, which laid out additional factors necessary to obtain approval of a professional for the estate. 472 B.R. 376–77. The Trustee therefore argues that he was forced to delay his application in order to respond to this Court's ruling. The Trustee finally submitted the First Application on May 3, 2012. [Finding of Fact No. 14].

The Court rejects this first excuse. According to the thirty-day deadline imposed by Bankruptcy Local Rule 2014-1(b), the Trustee should have filed his first application to retain MHKH by April 1, 2012—which was four days *before Bechuck* was issued! This Court's issuance of *Bechuck* therefore had nothing to do with the Trustee missing the thirty-day deadline. Moreover, even allowing for the Trustee to review *Bechuck* after it was issued on April 4, 2012, it is unreasonable that it took the Trustee another month to file the First Application with the *Bechuck* analysis contained therein. Thus, by the time the Trustee submitted the First Application, more than two months (i.e., from the beginning of services on March 1, 2012 until the Trustee filed the First Application on May 3, 2012) had passed since MHKH had begun to provide legal services, the value of which MHKH undoubtedly expects to collect from the estate. [Finding of Fact Nos. 14, 18 & 19].

On June 8, 2012, the Trustee requested that the First Application be withdrawn. [Finding of Fact No. 14]. The Court granted the request. [*Id.*]. On July 27, 2012—or seven weeks after this withdrawal—this Court then issued the Motion to Strike Memorandum Opinion. [Finding of Fact No. 15]. The Trustee states in the Second Application that he failed to file the Second Application in the interim (i.e., between withdrawal of the First Application on June 8, 2012 and issuance of the Motion to Strike Memorandum Opinion on July 27, 2012) in order to avoid the associated administrative expenses. [Doc. No. 117 at 12–13, ¶ 36]. Yet again, this Court rejects this explanation. Even if the Motion to Strike Memorandum Opinion substantially affected the Second Application, and the Trustee's requests included therein (thereby justifying the Trustee's delay until after its issuance), the Court fails to see how the Trustee's delay was due to a concern for reducing administrative costs. If the Trustee were truly cost-conscious, then it is not clear to this Court why MHKH continued to perform legal services—with the Trustee's knowledge— during this period. There was no reason to delay filing the Second Application until after this Court issued the Motion to Strike Memorandum Opinion when MHKH incurred these costs regardless. These are not the "exceptional circumstances" that *Triangle Chemicals* contemplates. 697 F.2d at 1289.

Finally, on September 12, 2012, the Trustee filed the Second Application. [Finding of Fact No. 18]. This last delay was, according to the Trustee, to give him sufficient time to await and respond to the Motion to Strike Memorandum Opinion. [Doc. No. 117 at 12–13, ¶ 36]. This excuse is, again, insufficient. The Motion to Strike Memorandum Opinion and the Order were issued over thirty days prior to the filing of the Second Application (i.e., from the issuance of the Motion to Strike Memorandum Opinion on July 27, 2012 to the Trustee filed the Second Application on September 12, 2012). [Finding of Fact Nos. 15 & 18]. There is no justification

for this lengthy delay. At the very least, the Second Application ought to have been filed within thirty days of this Court's ruling on the Motion to Strike Memorandum Opinion (i.e., on August 27, 2012). Inexplicably, it was not.

Overall, the Trustee's explanations for the delay in timely seeking this Court's approval to retain MHKH are inadequate. Indeed, MHKH has now performed legal services totaling $35,000 during the more than six months that the Trustee failed to seek approval from the Court to retain MHKH. [Finding of Fact No. 19]; *see also In re Triangle Chemicals, Inc.*, 697 F.2d at 1289 (stating that court approval should generally be sought "in advance" of employment). And, because the Trustee is a shareholder at MHKH [Finding of Fact No. 18], he knew, or should have known, that attorneys at his own firm were performing services that could lead to an administrative claim against the estate for $35,000. 11 U.S.C. § 503(b)(4). That is a claim that, if allowed, would have to be paid before any unsecured claimants received any distribution. 11 U.S.C. § 507(a)(2); 11 U.S.C. § 726(a). Such a result would unfairly prejudice the Debtor's unsecured creditors as well as other parties-in-interest who have waited *six months* for the Trustee to seek to obtain approval.

In sum, the Trustee has failed to satisfy the requirements of Bankruptcy Local Rule 2014-1(b). Under the Court's discretion articulated in *Triangle Chemicals*, the Court declines to exercise its "equitable power" and grant the relief requested. 697 F.2d at 1289. *Nunc pro tunc* relief is denied with prejudice.

## V.   CONCLUSION

As acknowledged in *Bechuck*, this Court recognizes that the requirements for obtaining approval to retain counsel may be unsettling and frustrating to Chapter 7 trustees. This Court is not unwilling to approve applications for employment, but the expertise and experience of the

proposed attorney must be fully articulated and analyzed in order to fulfill the Trustee's fiduciary duties to the estate. It is clear that many Chapter 7 trustees simply assume that repeated retention renders a firm and its attorneys "uniquely qualified" to perform *any* proposed services. On the contrary, all trustees—and all courts—have a duty to analyze each proposed representation on a case-by-case basis. The overarching objective of any application to employ counsel should be the "best interest of the estate"—not the administrative ease and professional benefit created by recommending the same friendly firm for every matter. An application for employment should never involve copy and paste; rather, it ought to satisfy the "high standard of conduct" required by a fiduciary. *In re Interamericas*, 321 B.R. at 836. The Court must be assured that "the Trustee sought out the *best* candidate to represent the estate in this particular case." *In re Bechuck*, 472 B.R. at 376. And, approval requires "concrete examples, not generalized references." *Id.*

This Court hopes that this Opinion will clarify the requirements for applications of trustees to employ their own law firms. The Court recognizes that retention of a trustee's own firm can be "a very effective method of providing quality representation of the bankruptcy estates . . . ." *In re Interamericas*, 321 B.R. at 833 (quoting *In re Kusler*, 224 B.R. 180, 193 (Bankr. N.D. Okla. 1998)). But, in order to warrant approval of counsel from a trustee's own firm, the trustee must meet several factors, including those articulated in § 327, Rule 2014, *Bechuck*, and the *Kurtzman/Interamericas* cases.

In the case at bar, this Court concludes that under each of the tests, the Second Application should be denied without prejudice. The Trustee is therefore entitled to refile an application to employ MHKH in general, and Million and Hyland in particular. If he chooses to do so, the Court trusts that he will address all of the issues raised in this Opinion. If he chooses

to file an application seeking to employ a firm different than MHKH, then he only needs to address the § 327(a), Rule 2014 and *Bechuck* requirements; there will be no need to address the § 327(d) requirement.

The Court denies with prejudice the Trustee's request to retain MHKH on a *nunc pro tunc* basis as of March 1, 2012. The Trustee has simply failed to satisfy the requirements of Bankruptcy Local Rule 2014-1(b). Thus, when the Trustee files another application, if he seeks to employ MHKH, he may *not* seek to employ MHKH on a *nunc pro tunc* basis, effective March 1, 2012.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed on this 5th day of December, 2012.

Jeff Bohm
Chief United States Bankruptcy Judge